**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**ALFONSO GALVAN, DIANA GALVAN,**
**DAVID GUILLEN, PERFECTO AGUIRRE,**
**SAMUEL MORFIN, AND RAFAEL SANCHEZ**                    **PLAINTIFFS**

**VERSUS**                    **CIVIL ACTION NO. 1:10CV159-KS-MTP**

**MISSISSIPPI POWER COMPANY AND**
**HARSCO CORPORATION**                    **DEFENDANTS**

**CONSOLIDATED WITH**

**LORENA RICO VELAZQUEZ, SURVIVING**
**SPOUSE OF ULISES JIMENEZ RODRIGUEZ, DECEASED,**
**INDIVIDUALLY, AND ON BEHALF OF**
**THE HEIRS AT LAW AND WRONGFUL DEATH**
**BENEFICIARIES OF ULISES JIMENEZ RODRIGUEZ, DECEASED**            **PLAINTIFF**

**VERSUS**                    **CIVIL ACTION NO. 1:11CV407-KS-MTP**

**MISSISSIPPI POWER COMPANY;**
**SOUTHERN COMPANY SERVICES, INC.;**
**PIC GROUP, INC. A/K/A THE PIC**
**COMPANIES; HARSCO CORPORATION;**
**LAND COAST INSULATION, INC.;**
**KENNETH M. CHEVIS, AND**
**JOHN DOES 1 THROUGH 10**                    **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on a Motion to Dismiss **[#178]** filed on behalf of

the defendant, Mississippi Power Company.  The court, having reviewed the motion, the

response, the briefs of counsel, the pleadings and exhibits on file and being otherwise

fully advised in the premises finds that the motion is well taken and should be granted.

The court specifically finds as follows:

## BACKGROUND

PIC Group, Inc. (PIC) entered into an agreement on or around August 22, 2008, with Mississippi Power Company to perform work regarding maintenance of boilers located at Mississippi Power Company's Plant Daniel located in Escatawpa, Mississippi. Approximately one month later on or around September 23, 2008, LandCoast Insulation, Inc. (LandCoast) entered into a subcontractor agreement with PIC in which LandCoast agreed to perform certain work which included constructing scaffolding at Mississippi Power Company's Plant Daniel under PIC's contract with MPC.

On or around September 19, 2008, LandCoast entered into a contract with Patent Construction Systems, a Division of Harsco Corporation, regarding supplying LandCoast with materials for the construction of the interior boiler scaffolding, including engineering drawings for the design and construction of the scaffolding.  On November 4, 2008, during the final stages of the erection of the scaffolding, the entire structure failed, injuring seven LandCoast employees, one fatally, Velazquez's decedent, Ulises Jimenez Rodriguez.  It is undisputed that Plaintiff's decedent, Rodriquez, was an employee of LandCoast and was killed while in the course and scope of his employment.

An initial lawsuit was filed in this matter by workers who worked around the scaffolding equipment, including Alfonso Galvan, Diana Galvan, David Guillen, Perfecto Aguirre, Samuel Morfin, and Rafael Sanchez in this Court against Defendants Mississippi Power Company, Southern Company Service, Inc., PIC Group, Inc. a/k/a the PIC Companies; and Harsco Corporation, as Cause No. 1:10cv159.  The *Galvan* Complaint alleged that six workers were injured and one death was caused while the

workers were working on or around the scaffolding when it collapsed.  The Complaint alleged that the *Galvan* plaintiffs were employees of Landcoast on or about November 4, 2008, in the course and scope of their employment with Landcoast when the plaintiffs sustained personal injuries while working on or around the scaffolding structure.

The Complaint which isthe subject of the current Motion to Dismiss was filed by Plaintiff Lorena Rico Velazquez, Surviving Spouse of Ulises Jimenez Rodriguez, Deceased, Individually, and on Behalf of the Heirs at Law and Wrongful Death Beneficiaries of Ulises Jimenez Rodriguez, Deceased.  The action was filed against Mississippi Power Company, Southern Company Services, Inc., PIC Group, Inc. a/k/a The PIC Companies, Harsco Corporation, Landcoast Insulation, Inc., and Kenneth M. Chevis and John Does 1-10, as Cause No. 1:11cv407.  This action has been consolidated with *Galvan*.

MPC has brought the present motion asserting that because it (MPC), the contract customer and premises owner, had no legal duty to protect the subcontractor's employees against the danger that Landcoast's scaffold might collapse, MPC is entitled to have the Court dismiss the Velasquez Complaint against it, based on Miss. Code Section 11-1-66 and the applicable common law.  The Court has previously denied a similar motion to dismiss in *Galvan*.

## STANDARD OF REVIEW

MPC has filed the present motion under Rule 12(b)(6 of the Federal Rules of Civil Procedure, contending that Velazquez has failed to state a claim upon which relief may be granted.  In ruling on a 12(b)(6) motion, the Court may not go outside the

pleadings, specifically the complaint and documents appended thereto.  "The Rule 12(b)(6) motion . . . only tests whether the claim has been adequately stated in the complaint."  5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1356 at 298 (1990).

As the Fifth Circuit has stated, "We may not go outside the pleadings.  We accept all well-pleaded facts as true and view them in the light most favorable to the Plaintiff. We cannot uphold the dismissal 'unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Colle v. Brazos County, Texas*, 981 F.2d 237, 243 (5th Cir. 1993)(internal footnotes and citations omitted).  *See also, Cinel v. Connick*, 15 F.3rd 1338, 1341 (5th Cir. 1994).

While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the United States Supreme court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 540, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929, 940 (2007)(other citations omitted).

If any matters outside the complaint and the documents attached and incorporated therein are considered, the motion is converted to one for summary judgment.  *See Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir. 1980).  Regarding such conversion, Rule 12(b) provides specifically;

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity

-4-

to present all material made pertinent to such a motion by Rule 56.

Thus, "[t]he element that triggers the conversion is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material.  It is not relevant how the defense is actually denominated."  5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1366 at 485 (1990).  Further, as the Fifth Circuit has explained;

> The only way to test the merit of a claim if matters outside the bounds of the complaint must be considered is by way of motion for summary judgment.  In that event, even if a motion to dismiss has been filed, the court must convert it into a summary judgment proceeding and afford the plaintiff a reasonable opportunity to present all material made pertinent to a summary judgment motion by Fed.R.Civ.P. 56.  *Arrington v. City of Fairfield*, 414 F.2d 687 (5th Cir. 1969); 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 at 679 (1969).

*Murphy v. Inexco Oil Co.*, 611 F.2d at 573.


## ANALYSIS

This Complaint differs from that filed by the Galvan plaintiffs in two critical respects.  First, in *Galvan*, the contracts, which define the duties of the parties, were not incorporated into the Complaint.  Here, the general contract between MPC and PIC and the subcontract between PIC and Landcoast are attached and incorporated as Exhibits "A" and "C" to the Complaint so their terms are part of the pleadings, and they explain the respective undertakings of the contractor and the subcontractor.  *See, Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).  As such, MPC argues that the contract terms establish that MPC owed no duty to protect Mr. Jimenez,

Landcoast's employee, from the risk of a collapsing scaffold.

MPC also contends that the Velasquez allegations, taken as true for the purposes of this motion only, clearly demonstrate that PIC was responsible for project safety, specifically, the responsibility to assure that the scaffolding had "adequate capacity to withstand the anticipated weight load and the forces to which it would be subjected."  And in turn, the Complaint alleges that LandCoast, the scaffold builder and employer of the decedent, had a duty to ensure the safety of the scaffold structure in accordance with all applicable building standards (¶54); to ensure the competence of its employees in accordance with applicable standards (¶¶54-55); and to have a "certified 'competent' person" oversee and ensure safe construction (¶¶54-55).  MPC asserts to the extent those duties may, in part, also be alleged as to other defendants is irrelevant, since those allegations are patently contradicted by the incorporated contract terms and applicable law which establishes the duties of a premises owner/customer and subcontractor/employer for injuries to the subcontractor's employees.

Velazquez's theory of liability against MPC is that MPC, through contract and through its actions, exercised control and supervision over the scaffolding project at Plant Daniel and as  such is liable for injuries incurred by Decedent Rodriguez's survivors proximately caused by MPC's alleged failure to properly supervise and control the scaffolding project.  Velazquez argues that pursuant to Mississippi law, liability may be imposed on MPC as the owner/occupier of Plant Daniel if MPC maintains any right of control over the performance of that aspect of the work which gave rise to the injury. *See Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So.2d 182, 186 (Miss. 1989).

However, Mississippi Code Annotated Section 11-1-66 provides, "No owner,

occupant, lessee or managing agent of property shall be liable for the death or injury of

an independent contractor or the independent contractor's employees resulting from

dangers of which the contractor knew or reasonably should have known." Likewise,

Mississippi common law protects a property owner who contracts for maintenance work

from liability for injuries to workers on the premises arising out of that work.

Plaintiff faults MPC for "not observing" and for failing to correct unsafe scaffolding

conditions and for "approving" preliminary drawings. However, § 11-1-66 defeats these

allegations since Plaintiff merely describes conditions, the danger of which should have

reasonably been known to LandCoast, the subcontractor. Indeed, the law recognizes

that the contractor who represents itself as having superior knowledge and the

appropriate expertise to do the work safely and has contracted to that end, should bear

the sole responsibility.

Citing § 11-1-66, Judge Pepper dismissed negligence claims against the owner

of a warehouse who contracted for the replacement of the warehouse roof.

*Marchbanks v . Hardware Distribution Warehouses, Inc.*, 2007 WL 2684243 at *3 (N. D.

Miss., Sept. 7, 2007). Despite the owner's actual or constructive knowledge of certain

defects in the premises, the contractor, whose business was roofing, was solely

responsible for protecting its employees from injuries sustained when its employee fell

through the warehouse roof. *Id.* Since the contractor was a roofing expert, it was

deemed to know of any dangers inherent in inspecting a damaged roof. *Id.* The owner

had no duty to make the premises safe for the contractor nor to warn of dangers in the

roof. Id. at *4. Accord *Saranthus v. Health Management Associates, Inc.*, 56 So.3d

1274, 1276 (Miss. App. 2011) (Once contractor has knowledge of danger, ensuing duty

to warn or protect subcontractor's employees from defects in owner's property rests solely with contractor) (decided under Mississippi common law).  Here, the absence of any duty on MPC is even more compelling since the scaffold was not part of its premises but was built entirely by Landcoast at PIC's direction with component parts supplied by Harsco, which prepared the original drawings.

The incorporated contract terms between PIC and LandCoast for the provision of plans and parts and for construction of the scaffolding, taken as true, confirm that LandCoast considered itself an expert with respect to that work:

> Whereas, subcontractor understands the type of services PIC desires to engage subcontractor to perform or the type of materials, equipment or supplies PIC desires subcontractor to provide and represents and warrants that it has the necessary competence, experience, and legal right to provide such services, materials, equipment or supplies.

Exhibit "C" to Complaint (Subcontractor Agreement).

Further, LandCoast is required by federal law to have the knowledge that it represented it had.  LandCoast, as an employer engaged in scaffold building, was subject to Occupational Safety and Health Administration ("OSHA") standards codified at 29 C.F.R. §1926.450-1926.454, "Safety Standards for Scaffolds Used in the Construction Industry," which assign the responsibility of protecting employees engaged in building scaffolding from the dangers of unstable construction to their employers. *See, e.g., Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 712 (5th Cir. 1981); *Cole v. Noble Drilling Corp.*, 2007 WL 2475944 (S.D. Miss., Aug. 28, 2007).

As a matter of federal law, LandCoast had the duty to comply with these preemptive federal regulations which codified standards governing, among other things, scaffold support structure and component load capacity (1926.451(a)), bracing of

scaffolding frames alone or in combination (1926.452), and stability of foundations (1926.451(c)(2)).  In addition, the regulations require that scaffolds and scaffold components be inspected before each shift by the employer's "competent person" (1926. 451(f)(3)).  In fact, Paragraphs 54-59 of the Complaint assert that LandCoast undertook the duties ascribed by OSHA.  No possible allegation against MPC could defeat or modify LandCoast's federal duties.

The reason for the scaffolding regulations is to prevent the very thing that happened here -- a scaffold collapse -- so that danger should reasonably have been apparent to the scaffold builder.  Velazquez's allegations that MPC is liable for an unsafe workplace, for a defect in the premises, or for a failure to warn of dangers are deficient as a matter of law because LandCoast reasonably should have known of the danger of a scaffold collapse due to structurally unsound construction.  In accordance with § 11-1- 6 and the OSHA regulation discussed above, the Complaint must be dismissed.

The result is the same under Mississippi common law -- the owner is under no duty to protect the contractor's employee from the very hazard created by the doing of the contract work.  When a danger exists which is inherent to the work the independent contractor is employed to perform or which arises from, or is intimately connected with, that work, the owner has no liability for injuries to the contractor's workers.  *Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So.2d 182, 185 (Miss. 1989).

In *Bevis v. Linkous*, 856 So.2d 535 (Miss. App. 2003), the premises owner's Motion to Dismiss personal injury claims by a subcontractor's employee was granted under circumstances substantially similar to those now before the Court.  Eddie Ray

Bevis, an ironworker employed by Fischer Steel Company ("Fischer Steel"), was killed

in a construction accident at a job site in Marshall County, Mississippi.  *Id*. at 537.  At

the time, Fischer Steel was a subcontractor to Linkous Construction Company, Inc.

("Linkous"), the primary contractor on the project, which involved construction of a

distribution center for Westinghouse Electric Corporation, Inc. ("Westinghouse"), the

owner of the property.  *Id.*at 538.  Bevis' surviving widow sued Linkous, the prime

contractor, and Westinghouse claiming that negligence of each proximately caused her

husband's death.  *Id.*

The Circuit Court granted Westinghouse's Motion to Dismiss under Mississippi

Rule of Civil Procedure 12(b)(6)(which mirrors Federal Rule 12(b)(6)).  The complaint

alleged that Westinghouse "contracted for the construction of a distribution center," that

Linkous was the contractor for the project; and, as to Westinghouse that:

> Your Plaintiff would aver that Defendant Westinghouse was negligent in
> that it failed to properly inspect and properly provide a reasonably safe
> workplace; use reasonable care to prevent bodily injury or death to those
> persons working in areas where they might reasonably be expected to
> work; that it had a duty to safeguard against injuries arising from
> construction operations and to correct and remove reasonably foreseeable
> causes of danger and adequately warn of dangerous conditions existing
> on the job site premises and to ensure that the construction site was safe
> and proceeding according to proper design specifications. That this failure
> to inspect and warn was the proximate cause of Plaintiff's severe injuries,
> death and damages.

*Id.*

After reviewing the applicable law, the court concluded that the well-pled facts

simply did not give rise to any legally recognized theory of premises liability against

Westinghouse and dismissed the Complaint against it, saying:

The hazardous condition complained of in this case did not arise out of a

-10-

condition of the property created by the owner or existing on the property in a concealed state at the commencement of the project. Rather, it was a hazard created by the contractor, Linkous, in the course of completing its duties under the construction contract. In such a situation, it is logically impossible to argue that Linkous had no knowledge of the condition or that Westinghouse somehow had an awareness of both the fact of the hazardous condition and an appreciation of the dangerous nature of the condition that was superior to that of Linkous, the general contractor and the entity that created the alleged hazard.

*Id.* at 540, 541.

Here, as in *Bevis*, there are absolutely no allegations that MPC failed to warn of a defect in its premises which pre-existed LandCoast's construction of the scaffolding. The allegations of the Complaint, including exhibits, are essentially the same as those in *Bevis:* negligent inspection and supervision of the scaffold installation ( ¶¶21, 22, 26); unreasonably unsafe workplace and failure to correct unsafe conditions regarding the scaffold ( ¶¶22, 23, 28, 31); failure to warn of construction defects (¶26); and failure to ensure proper design specifications (¶¶20, 21, 24).  Further, under the subcontract, it is likewise "logically impossible" to conclude that the scaffold builder needed to be warned by the premises owner of dangers inherent in construction of the scaffolding by the subcontractor/decedent's employer.  See also, *International Paper Co. v. Townsend*, 961 So.2d 741, 750-51 (Miss. App. 2007) (independent contractor's employee injured when log fell off his truck during unloading on the wood yard premises -- premises owner's duty to furnish a reasonably safe *place* to work did not include hazards that did not exist on its *property*, but rather existed as a result of contractor's work).  *Id.* at 751 (emphasis in original).  Here, absent an alleged defect in the owner's premises, the Complaint alleges no reason why LandCoast needed to be protected by MPC from the specific dangers inherent in its own work.

-11-

Further, when the contract terms are read in conjunction with the allegations that MPC inspected the scaffold, approved the drawings and provided a place for LandCoast's workers to meet, they do not allege sufficient control over the scaffold construction to give rise to an MPC duty to protect the scaffold builder's employees. "Control is shown by the 'undisputed language of the contract' between the premises owner and the contractor." *International Paper v. Townsend*, 961 So.2d at 743; *see also, Magee*, 551 So.2d at 186 (contract language is key to right of control issue where the subcontractor's employee -- not a member of the consuming public -- is injured performing the contract work). Here, the terms of the general contract and subcontract have been incorporated into the Complaint and are to be taken as true. First, the terms of the General Contract:

> The Contractor shall furnish all supervision, labor, and tools, and shall furnish such equipment and materials as may be requested by the Purchaser, and shall perform, in a good, proper and workmanlike manner .
> . . .

> It is the object and intent of contract made hereunder with the Contractor, to cover and include all labor, supervision, materials, equipment, supplies, construction equipment and tools necessary to perform the specified Work, complete and in the manner herein specified. Any labor, supervision materials, equipment, supplies, construction equipment or tools not specifically mentioned in the Contract, but which may be necessary to complete the Work in a proper and workmanlike manner to achieve the intended results, shall be furnished by the Contractor the same as if specifically mentioned and without extra charge or cost to the Purchaser..

> Contractor will be solely responsible for the safe performance of its Services under this Contract, including the safety of its employees, subcontractors, subcontractors' employees and the public affected by performance of its Services.

> Contractor shall be solely responsible for the safe performance of its work under this Contract, including the safety of its employees, subcontractors and subcontractors' employees and the public affected by performance of

this Contract. The Contractor, in performing work on the Contract, is and shall at all times perform as an independent contractor, and shall be free to perform the Work by such methods and in such manner as the Contractor may choose, furnishing all labor, tools, equipment and materials, and doing everything else necessary to perform the Work properly and safely, having supervision over and responsibility for the safety and actions of its employees, and control and responsibility for its tools, equipment and materials.

*See* General Conditions of the Contract, Ex. A to the Complaint.

PIC's subcontract with LandCoast for the scaffolding work necessary to facilitate maintenance and repair of the boiler contains the following provisions clearly establishing that LandCoast was responsible for the "work on and around the scaffolding structure" and that MPC was not.

PIC hereby retains subcontractor as an independent contractor to furnish all labor, supervision, tools, equipment, materials, supplies and facilities and to perform such services, tasks or activities . . .

Subcontractor shall only take instruction or direction from PIC. Subcontractor shall not take instruction or direction from Customer [MPC] or others unless specifically requested to do so by PIC.

PIC-Landcoast Subcontractor Agreement at § 3(d), Ex. C to the Complaint.

Ex. B to the Complaint," Purchase Order" between LandCoast and PIC further confirms LandCoast's sole responsibilities:

The Subcontractor, Landcoast, Inc., shall furnish all supervision, labor, tools, equipment, materials, supplies, consumable and required construction equipment to perform below subcontractor craft specific scaffold and insulation described work scope for the Mississippi Power Plant Daniel Unit 2 2008 Fall Outage Work.

LandCoast not only warranted that it possessed the requisite competence and experience to install the scaffolding, it had the sole responsibility for providing the

means and methods for constructing the scaffolding and supervising all construction. Moreover, any "instruction or direction" to LandCoast, to the extent any was necessary, would come, per the subcontract, from PIC and not MPC, the customer.

What the Complaint does not allege against MPC is that its "approval" of the plans and/or its "inspection" of the work had anything whatsoever to do with the structural integrity of the scaffolding. Thus, the allegations pertaining to its "supervision," "approval," and "inspection" do not give rise to a duty of MPC as owner/customer to protect the subcontractor's employees.

Mississippi law supports the proposition that MPC, as the customer, had every right to see if the scaffolding plans allowed access to all necessary parts of the boiler, i.e., comported with bidding specs. *See McLaurin v. Nobel Drilling, Inc.*, 2009 WL 367401 (S.D. Miss., Feb. 10, 2009) (fact of control over the contractor's work is not established where: 1) owner helped create safety program, 2) owner had right to stop work, 3) owner had company man on site at all times, as well as a group of site representatives to monitor all of the contractor's activities, 4) had site representatives who routinely evaluated the contractor's compliance with plans, specifications, work practices and quality and actually "interfaced with contractor's supervisors to make head counts and to synchronize the work and the movement of materials and equipment".); *Hodges v. Atala County*, 42 So.3d 624, 627 (Miss. App. 2010) (the exercise or retention of a general right to recommend safe manner for the independent contractor's employees to perform their work is not enough to subject a premises owner to liability, nor is mere supervision over the work of the subcontractor, up to and including the right to stop a project and control sufficient to impose liability); *Chisolm v. Mississippi*

-14-

*Department of Transportation*, 942 So.2d 136, 141-42 (Miss. 2006) (owner's right to ensure that contractor's work complies with the owner's specs does not mean that the owner is exercising control over the physical conduct of the work. Therefore, owner has no liability arising from contractor's work); and *Magee*, 551 So.2d at 185 (the fact that the owner conducts periodic inspections of the work does not constitute sufficient control to warrant liability for the contractor's work).

The limited exception to the rule that a premises owner has no liability for injuries to a contractor's workers when such injuries are related to the contractor's work arises where the owner has *de facto* control over the work that the contractor performs. However, an owner does not exercise *de facto* control over the contractor's work by performing "periodic inspections" of the work (*Bevis,* 856 So.2d at 185-86); by "evaluating" the work or retaining a right to stop the work *(McLaurin v. Nobel Drilling Inc.*, 2009 WL 367401); by "supervising" the work or recommending how to perform the work (*Hodges*, 42 So. 3rd at 627); or by ensuring that the work meets the owners specs (*Chrisolm*, 942 So.2d at 141-142.).  Although MPC may have "inspected" the work area, "approved" the drawings and "allowed" LandCoast workers to meet on its premises, the contracts and the allegations against PIC and LandCoast show unequivocally who had responsibility for building a scaffold that wouldn't collapse - the builder, not MPC.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Dismiss **[#178]** filed on behalf of the defendant, Mississippi Power Company is granted and the Plaintiff's Complaint is dismissed with prejudice as to Mississippi Power Company.  A separate judgment will be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

-15-

SO ORDERED AND ADJUDGED, this the 22nd day of May, 2012.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE